On our docket today is in re the marriage of LeDean Gee versus Darryl Gee and we have Ms. Miner for the appellant and Ms. Patchett for the affiliate. You may begin. Thank you. My name is Norm Miner. I practice in Marion in Houston County and I represent the appellant, LeDean Gee. There are two issues that I wish to address. The first being the judge's or trial judge's findings that there was marital assets used to improve LeDean Gee's non-marital assets. I don't know where in the evidence that we got that there was marital assets being used. Both parties, they were married less than five years when they separated the last time. Both parties testified that neither party worked during the marriage. So there was no marital income coming in. Without marital income, there were no marital assets purchased. The only marital asset or even possibly marital asset was a injury, personal injury, from LeDean Gee being in an auto accident. That's the only thing that was acquired during the marriage. In fact, Gerald Gee testified that he has not earned enough income to file a tax return in over 20 years. He says he earned $5,000 during this marriage. So without this money, I don't know where the judge got that there were marital assets that were being used. Even the personal injury funds are still intact and being held by the personal injury attorney. Those have not been distributed, so it couldn't have been used in the property. The only resources these parties had during the marriage came from LeDean Gee's pre-marital retirement funds, her Social Security, and money that was derived from her pre-marital bar in Hearst, Illinois, which was an incorporated bar. She obtained another small bar that even Gerald Gee testified that the bar in Hearst that she owned well before she married him paid for itself, and the money from that bar purchased the bullpen. My understanding of the law is that anything that is non-marital stays non-marital. Anything derived from that non-marital property income is also non-marital. Let's deal with this personal injury settlement. You contend that the trial court gave him 50%. Drucker only gave him 20%. They gave him 20% of all of her assets. But you contend in your conclusion that Daryl's interest should not be 50% of the money from the personal injury settlement. It was only 20%. Right. 20% should be correct. Okay. Because she testified that he did at least come, they were separated at the time of the injury, but he did come and take her to the doctor a couple of times. So for that reason, I believe he is entitled to something from that. When they first, when they got married, Eugene Gee had approximately $150,000. That has been totally exhausted during this marriage. And I don't, I still don't know where the judge got the findings that there were any marital assets used in that property. I believe that is against the manifest way of the evidence. Where were the video machines? Were they in both the bars? Yes. Yeah. My limited experience and knowledge of these machines. Is there any work that either of them did? No. They don't take a key and clean out the back of them and then give half to the, they don't do anything? No. The owner of the machines comes in and checks the machines and takes the money. Let's say that some of them were not used for amusement only. Don't they take money out of a cash register and pay some of the lucky players there? In my opinion, yes, they do. Not the owners of the machine, but the people that run the bar do that, right? No, I think it comes from the proceeds of the machine. Right, but I mean, they have to go, let's say, pay off some of the winners. When I asked the owners of the machines that, they gave me an understanding those were not gambling machines. Those were machines of entertainment. And I said, do they not pay off? And he said, not that we know of, but he's the one who comes and checks them. There was another issue about some rental property. Ludine Gee bought a house for $14,000 for her daughter and her grandchildren. Mr. Gee had referred to that as rental property, but the property was never rented. Again, there was no marital income to purchase that property. She purchased that from her premarital funds, and materials that went into it, remodeled, also came from her nonmarital funds. He says he put labor into it, and I'll get into that in my second issue. There was another issue about a vehicle, an MGB vehicle. I refuted that Ludine Gee paid $500 for this vehicle. Again, no marital money. Darryl testified he believed that the vehicle was now worth $9,000, and the court decided the value of $4,600 and granted Mr. Gee $920 of it. I'm not sure where those figures came from.  The other issue that I have is that courts granted Mr. Gee 20% of his personal efforts. Neither the court nor Mr. Gee has ever referred to the statute of 503c2, which clearly states that when one estate of property, a personal effort of the spouse contributes to another estate, it exactly says, provided that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, and in the case of a personal effort of a spouse, the effort has to be significant and results in a substantial appreciation of nonmarital property. The judge, in his own words, said that based upon Mr. Gee's extremely minimal efforts, he gave him 20%. No time did the judge refer to that particular statute. So I don't know why the 20% kind of reminded me of child support. I believe that that was against the statute. I believe it was an abuse of discretion to decide against the statute and find that even though it was extremely minimal, that he still granted him 20%. I believe they're nonmarital. She had that bar a long time before she married him. She didn't work the bar, neither did he. He would go in there and set it free and kind of watch people, but he never worked, never had a job. She didn't work at all there? Didn't do any of the books or go to the bank or anything for him? The evidence was clear. She did not work. Both of them testified. She hired a manager, I guess, or something? Yes. There was a manager of the bar. I think it might have been a family member. It's a very small bar. You know what hers is like. It's a very small community, a very small bar. And both of them did testify. They didn't want him to actually work. He says he'd go in there and he'd fill in, but he never had a salary, never was paid, never filed taxes. As a matter of fact, he wouldn't even file a joint tax return with Lydia G. And he would not have ever claimed him as a defendant on her taxes, because he did not want to miss those security number of one of the IRS. So she supported him but didn't claim him. She doesn't claim him now either, does she? No. The court decided that that was about $35,000 for that house, back to the house that she bought for her daughter, which she paid $14,000 for. Darrell G. says he believed it was worth $40,000. He offered no evidence of that value. Other than their personal testimony, there was nobody who came in with appraisals or valuations, realtors, nothing? None. It was all based upon Mr. G. believed it was worth this much at the time of the marriage, and he believed it was worth this much now, and then the court came up with a different figure. Just like the house he believed was worth $40,000, the judge decided $35,000. Darrell believed the first bar was worth $60,000 at the time of the marriage and worth $100,000 at the time of the dissolution, and the court assessed it at $52,389. Darrell believed the bullpen, which she only bought the inventory of, was worth $80,000, and the court assessed it at $8,500 as an increased value, and he granted him 20%. There is an exhibit in the file of pictures of her non-marital home. He testified that his work, his labor went into that home, too. The pictures will show not only was it not a significant increase or an appreciation of that property, it is a definite depreciation of that property. The pictures alone show that. Mr. G. never finished a job. Unrefuted, she testified that he said the reason he never finished his job was because that was home security. That way he could come back. If he didn't finish the job, he could come back home because they separated all the time. I do believe that, and it is our position that the court was against the manifest way that the evidence finding which was any marital property used to improve the non-marital, and it was definitely an abuse of discretion to determine a 20% value on his efforts that he said was extremely minimal. Thank you. Thank you. You'll have the opportunity to rebut. Mr. Padgett. This is an interesting case, I guess. I'm not familiar with the establishments in question, but obviously it restrains credulity to think that this woman owns these bars, and this is her husband, and $50,000, $80,000 a year goes through these machines, and they don't do any work. They don't check the cash. They don't take the money in the bank. They don't do anything. It's incredulous. They wouldn't have any money at all if they allowed their bartenders to do all the work. He testified, I believe, that he had a few of the machines, that he did do some things at the bar. Obviously, from the evidence, neither one of them wanted to admit working and making money. It's an illegal enterprise, but it was producing many thousands of dollars a year, and during the time they were married. How would that be any different from rental property, some non-marital pre-marriage rental property that you had a manager and that he maintained for the lady? Would it be any different? If you had a manager, it would be closer, but it still would be different, because if you have rental property, it's not an everyday, hands-on enterprise. And I submit that you can't run a bar, and I don't think it was the evidence. He testified he did work in a bar, and he testified he had a few of the machines. And you can't run a situation like this without being involved with it. It's just extremely incredulous. You're saying that the record will show that he did participate in it, and she did too? He testified to that. Obviously, they did not testify similarly on a lot of facts. Right. And I don't think the record will show in response to Ms. Plexman's question any appraisal by her or any estimate by her of what the thing is. It's his burden, isn't it? It's not her burden. It's his burden to claim value. That's true. But she did provide it, because I don't believe there's anything in the record. She never testified with anything. Let's square with me the trial court's finding of extreme minimal contribution under 503, which the trial court says was 502, C-2, and a statute that requires significant and substantial appreciation of the non-marital property. I can't. And the best I can explain is what we have here is a very, not due to all the trial attorneys, but the record is very filled with holes. And what we have is estimates of value by lay people. What we have is a CPA that says there wasn't any money coming in, and people on the machines that said there was thousands of dollars coming in. And we have a personal injury accident, which clearly is marital property. And I think the judge just kind of, based on the record he had, put it all in a pot and said, this is what I'm going to do. And I don't think he abused his discretion, because obviously he was the guy who sat in the courtroom with them and got to listen to all this testimony and got to listen to them say they weren't working and listen to them say they didn't have anything to do with the machines, didn't have anything to do with the money. And I think, you know, he had a chance to look at their credibility and assess it. And that's what I think was the difference, because we don't know, based on the record, how much of it was personal injury, how much of it was machines, how much of it was efforts made during the marriage. I think when he said extremely minimal, he was probably talking about the remodeling of some of the efforts that Mr. Gee said he made, and it is his birth. But she didn't express any opinions that I could see in the record, and I wasn't at the trial level, about the value of any of these assets. So, you know, to me it seems like an eminently reasonable figure, and I don't think it was an abuse of discretion. And based on the record that we have, I think it was a proper decision. Now, one could argue something could have been different or something could have been more or less, but we're not arguing. We're just saying that we think the judge did a proper decision based on the evidence that he had in front of him at the time, and we don't think he abused his discretion. And there's no question that he did do some remodeling and he did contribute to the bars. He testified to that. And I think that the judge could have believed his testimony as to having a key and working in the bars as opposed to hers, but neither one of them had anything to do with the bars at all. That does not seem to be a credible position. But in any event, it's an interesting case, I guess, but compared to the ones you've probably already heard today, not terribly complicated, unless you have any other questions. I don't have anything else to say. Thank you. Thank you, Mr. Pendleton. Mr. Miner, do you have a rebuttal? Yes, very briefly. That would be on the machines. Machines were not owned by these people. They're owned by someone else. What would he be doing with the key? They had the key there in case they need to open it up to pay out. I'm sure that's why, but they don't tell that's why. They were not going to tell those machines paid out. The owners of the machines were going to say they paid out. But they're the ones who come in and check them. They're the ones who come in and take the monies and divide it up and decide who gets what. About the late people testifying, the late people meaning Darrell Gee. He testified that no time during the discovery did he ask for an appraisal, no time did he even get an appraisal. It was just what he believed it was worth. And if he worked at the bar, put all this work in the bar, why did he not file a tax return? Why did he not get an income and file a tax return or at least file jointly with Mrs. Gee? He did not. He drank at the bar. We have no doubt about that. He'd sit and entertain his friends. And if they happened to be, the bartender, busy, he might check on them. What's going on in the bar, but at work and have a job. No, he did not. Thank you. Thank you. Thank you both for your arguments and briefs. We'll render a ruling in due course.